(No. 61073.—

RITA M. RICHTER, Appellee, v. SEYMOUR DIA-MOND *et al.* (Northwestern Memorial Hospital, Appellant).

*Opinion filed October 3, 1985.*

Miles J. Zaremski, Frederic J. Entin and Mark C. Friedlander, of Lurie, Sklar & Simon, Ltd., of Chicago, for appellant.

Leonard M. Ring & Associates and Concannon, Dillon, Snook & Morton, of Chicago (Leonard M. Ring, William R. Dillon and Margaret A. McGuire, of counsel), for appellee.

Mark D. Deaton and Daniel J. Mulvanny, of Naperville, for amicus curiae Illinois Hospital Association.

JUSTICE MILLER delivered the opinion of the court:

Following a hearing in the circuit court of Cook County, Northwestern Memorial Hospital was found in civil contempt for its refusal to answer certain supplemental interrogatories propounded to it by the plaintiff, Rita M. Richter; a sanction was imposed. We allowed Northwestern's request for a direct appeal (94 Ill. 2d R. 302(b)) and now affirm the judgment of the circuit court.

The action underlying this appeal is one for medical malpractice stemming from the diagnosis and removal of a tumor found in the plaintiff's head. The basis for the plaintiff's cause of action against defendant Northwestern Memorial Hospital, where the surgery was performed, concerns its supervision of the surgeon, Dr. Edir B. Siqueira, M.D., who also is a defendant. The com-

plaint alleges that the operation resulted in the paralysis of certain cranial nerves. The remaining persons named as defendants—Dr. Seymour Diamond, M.D., Diamond Headache Clinic, Ltd., and Dr. John H. Buehler, M.D.— had treated the plaintiff earlier and allegedly failed to diagnose her condition.

The interrogatories at issue here inquire into the nature and extent of Dr. Siqueira's staff privileges at Northwestern. Two questions have been asked:

> "1. State whether at any time between 1964 and September 12, 1980, Edir Siqueira, M.D.'s privileges as a member of the medical staff of the defendant hospital were restricted.
>
> 2. If the answer to the foregoing interrogatory is in the affirmative, state:
>
> (a) the inclusive dates of any restrictions;
> (b) the specific nature of the restrictions;
> (c) the specific conditions imposed upon Dr. Siqueira's privileges by the restrictions."

Northwestern objected to answering both questions, relying on the statutory privilege that protects and prevents from disclosure certain information concerning internal hospital proceedings. Therefore, in response to each question, Northwestern replied:

> "This defendant respectfully declines to answer this Interrogatory, in that the information sought in said Interrogatory is information which is absolutely privileged from discovery or other disclosure in this action at law, pursuant to the Illinois Medical Studies Act, Ill. Rev. Stat. (1983), Ch. 110, Secs. 8—2101, 8—2102, 8—2105.
>
> No disrespect or contumacious conduct is intended or shown to the Court by this response made in good faith."

The circuit judge believed that the information requested by the plaintiff in her supplemental interrogatories was not within the protection afforded by the statutory privilege; therefore, the judge found Northwestern in civil contempt for its refusal to answer them.

Section 8—2101 of the Code of Civil Procedure (Ill. Rev. Stat., 1984 Supp., ch. 110, par. 8—2101) provides:

"All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health, the Illinois Department of Mental Health and Developmental Disabilities, Illinois State Medical Society, allied medical societies, physician-owned inter-insurance exchanges and their agents, or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based."

Both the discovery and the use as evidence of "[s]uch information, records, reports, statements, notes, memoranda, or other data" are prohibited (Ill. Rev. Stat. 1983, ch. 110, par. 8—2102); moreover, improper disclosure of privileged material is punishable as a Class A misdemeanor Ill. Rev. Stat. 1983, ch. 110, par. 8—2105.

The supplemental interrogatories at issue here replaced earlier ones that included inquiries into what the plaintiff concedes now were privileged matters, such as the identities of persons who participated in reviews of Dr. Siqueira's work. Now, the plaintiff seeks only a statement of the nature and extent of restrictions imposed on Dr. Siqueira at the hospital over a period of time.

We conclude that the information sought here by the plaintiff's supplemental interrogatories is outside the scope of the statute and therefore subject to discovery. The purpose of the statutory privilege "is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care. The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480.) The restrictions imposed by a hospital on a particular doctor's privileges to practice there may result from or be the consequence of the peer-review process, or of other internal methods of monitoring and reviewing hospital activity, but that does not mean that the restrictions themselves must also be considered privileged and kept confidential. The reasons for according a privilege to the peer-review process simply do not apply to the restrictions that may be imposed as a result of that process. Thus, disclosure of the information sought here—the nature and extent of the restrictions imposed on Dr. Siqueira over a period of time—would not be inconsistent with the purposes of the statutory privilege.

We note that a request similar to the one made here recently was approved by the appellate court in *Gleason v. St. Elizabeth Medical Center* (1985), 135 Ill. App. 3d 92. One of the plaintiff's interrogatories in that case requested information on the steps taken by the defendant hospital to supervise or prohibit a particular doctor's practice there, following the taking of depositions in other actions against the doctor. The appellate court approved the inquiry, concluding the steps taken as a result of the peer-review process are outside the scope of section 8—2101 and hence subject to discovery. The narrow requests made here and in *Gleason* must be distin-

guished from that prohibited in *Mennes v. South Chicago Community Hospital* (1981), 100 Ill. App. 3d 1029. The information sought there was "hospital material regarding the granting and extension of staff privileges" (100 Ill. App. 3d 1029, 1031), a broad inquiry that included a request for " '[a]ll material regarding the granting of privileges regarding all Defendant doctors' " (100 Ill. App. 3d 1029, 1029).

Having determined that the information requested by the supplemental interrogatories is outside the scope of section 8—2101 and therefore is not privileged, we affirm the judgment of the circuit court and remand the cause for further proceedings.

*Affirmed and remanded.*