RICHARD ARDISANA, Plaintiff-Appellee, v. NORTHWEST COMMUNITY HOSPITAL, INC., Defendant-Appellant (Carol Ladd *et al.*, Defendants).

First District (1st Division)    No. 1—02—2700

Opinion filed August 11, 2003.

Patricia J. Foltz and Diane I. Jennings, both of Anderson, Bennett & Partners, of Chicago, for appellant.

Richard B. Rogich, Timothy M. Richardson, and Michael W. Rathsack, all of Chicago, for appellee.

JUSTICE SMITH delivered the opinion of the court:

Defendant Northwest Community Hospital (Northwest) appeals from a circuit court order holding it in contempt for refusing to produce certain documents requested in discovery by plaintiff Richard Ardisana. Northwest contends that the documents in question are protected from discovery under section 8—2101 of the Code of Civil Procedure (735 ILCS 5/8—2101 (West 1998)) (the Medical Studies Act or the Act).

## Factual Background

The underlying action in this case arises out of medical care provided to plaintiff at Northwest from November 11, 1999, through January 10, 2000. In his second amended complaint, plaintiff alleges in pertinent part that he underwent a surgical procedure at Northwest on November 11, 1999, to remove a growth from his colon. In the days following that surgery, plaintiff developed gastric reflux, vomiting and abdominal bleeding. The vomiting caused wound evisceration, necessitating repair surgery done under general anesthesia on November 16, 1999. Plaintiff aspirated vomit during the latter surgery and subsequently developed aspiration pneumonia.

Plaintiff's complaint further alleges that employees, agents and/or apparent agents of Northwest, including the surgeon (Dr. Robert Aki) and the anesthesiologist for the second surgery (Dr. Subhash Balaney), were negligent in various respects that caused the wound evisceration and the aspiration pneumonia, which in turn led to severe and permanent damage to his lungs.

In the course of discovery, plaintiff filed a supplemental request to produce, asking in part that Northwest produce the following documents:

"Any and all writings, memos or documents pertaining to any conclusions or final recommendations for any peer review process,

including the Department of Surgery, pertaining to Richard Ardisana. If any materials are claimed to be privileged, please provide a privilege log identifying the document and its date."

Northwest objected on the ground that the documents it had were privileged pursuant to the Medical Studies Act. The trial court directed Northwest to provide for its *in camera* review a privilege log stating the basis for each claim of privilege, a copy of the documents listed in the log, and a copy of the complaint. Northwest filed the requested documents, as well as the affidavit of its risk manager, Karla Ford, in which it was averred that the documents provided for *in camera* inspection

"were generated in conjunction with investigations by the General Surgery Quality Audit and Anesthesia Quality Improvement Audit Committees. These documents were prepared solely for those two committees and by these committees. The documents referenced in the privilege log under Roman numerals I and II were used exclusively by those committees and were shared with no one outside of those committees. The sole exception is the letter sent to Dr. Balaney, which was sent to him but arose exclusively from the committee's investigation and requested information for the exclusive use of the committee."

The attached privilege log identified two pertinent groups of documents:

1. A quality management worksheet prepared for the surgical quality audit committee, dated February 23, 2000, and minutes of audit committee meetings held on February 23 and April 19, 2000, at which plaintiff's care was discussed.

2. A quality management worksheet prepared for the anesthesia department quality audit committee dated May 10, 2000, minutes of an audit committee meeting held May 10, 2000, and a letter from the chairman of the audit committee to Dr. Subhash Balaney dated June 5, 2000, requesting certain additional information about plaintiff's care.

Plaintiff did not file a written response to Northwest's objections. The trial court issued a written memorandum decision on June 11, 2002, in which it ruled that all of the material claimed by Northwest to be privileged was discoverable. Specifically, the court held that only material that was generated during the temporal parameters of the peer-review process was privileged and that Northwest had failed to establish when the process in this case commenced and ended. Additionally, the court found that the internal conclusions and recommendations of the committees constituted "results," which are not privileged under the Act.

On June 24, 2002, Northwest filed a motion to reconsider.[1] To that motion were attached two additional affidavits. The first was that of Cynthia Dougherty, R.N., who was director of Northwest's quality measurement and improvement (QMI) department when the medical care at issue was provided. Ms. Dougherty averred that the quality review in this case commenced shortly after plaintiff's discharge and was triggered by the fact that it met established screening criteria set by the departments of surgery and anesthesia. She outlined the reviewing process and the steps taken to ensure that the information generated during the course of that review remained confidential.

The second affidavit was that of Susan Sullivan, another member of the QMI department. Ms. Sullivan was involved with the reviews conducted in this case by both the department of surgery and the department of anesthesia. She averred the department of surgery concluded its review on April 19, 2000, but that, as of the date of her affidavit (June 24, 2002), she was not aware that the department of anesthesia had yet completed its review. Like the affidavit of Ms. Dougherty, Ms. Sullivan's affidavit contained detailed information with respect to the steps taken to preserve the confidentiality of the documents generated during the peer-review process.

Both affiants stated that the documents in question (labeled exhibit E) pertained solely to quality reviews conducted on plaintiff's care and on the care of other patients that the committees reviewed during the same meetings.

On August 12, 2002, the trial court issued its written ruling on Northwest's motion to reconsider. The court ordered that the documents containing references to patients other than plaintiff be redacted because the information was irrelevant. It otherwise denied the motion, however, because the supplemental affidavits could have been submitted prior to the court's initial ruling and because, in the court's view, the added materials still did not specifically identify when the peer-review process began, who started it and when it ended.

Despite the court's ruling, Northwest continued to refuse to produce the disputed documents. On August 22, 2002, the court entered an order, *nunc pro tunc*, in which it held Northwest in contempt, and imposed a fine of $50. This appeal followed.

## Discussion

On appeal, Northwest contends that the documents at issue fall

---

[1]Northwest produced some of the documents the court ruled to have been discoverable, specifically, worksheets generated for and used by Northwest's risk management department. Those documents are not at issue in this appeal.

squarely within the letter and spirit of the Medical Studies Act and that the circuit court accordingly erred when it ruled that they were not privileged from discovery.

■ The burden of establishing a privilege under the Medical Studies Act is on the party seeking to invoke it. *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 41 (1993). Whether a discovery privilege applies is a matter of law, which we review *de novo*. *Niven v. Siqueira*, 109 Ill. 2d 357, 368 (1985). However, the question of whether specific materials are part of a medical study or an internal quality control is a factual question within that legal determination, subject to reversal upon review only if it is against the manifest weight of the evidence. *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 401 (1998).

■ The Medical Studies Act provides:

"All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of *** committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity and mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, *** the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services ***." 735 ILCS 5/8—2101 (West 1998).

The Act further provides that such privileged material "shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." 735 ILCS 5/8—2102 (West 1998).

■ The purpose of the Medical Studies Act is to advance the quality of health care by ensuring that members of the medical profession effectively engage in a peer-review process. *Richter v. Diamond*, 108 Ill. 2d 265, 269 (1985). Absent a confidentiality provision, physicians might be reluctant to engage in strict peer review due to a number of apprehensions: loss of referrals, respect, and friends, possible retaliations, vulnerability to tort actions, and fear of malpractice actions in which the records of the peer-review proceedings might be used. *Jenkins v. Wu*, 102 Ill. 2d 468, 480 (1984), quoting G. Gusfield, Note, *Medical Peer Review Protection in the Health Care Industry*, 52 Temple L.Q. 552, 558 (1979). Thus, the Act protects documents that arise

from the workings of a peer-review committee (*Roach*, 157 Ill. 2d at 40) and that are an integral part but not the result of the peer-review process. *Richter*, 108 Ill. 2d at 269.

With the foregoing principles in mind, we examine the trial court's ruling.

## A. Recommendations v. Results

■ The trial court determined that the "conclusions or final recommendations" of a peer-review committee are the equivalent of discoverable "results." Based on this premise, the court ordered produced pages 1 and 2 of the surgical department quality review, which contain a committee conclusion; page 9 of the minutes of the general surgery QMI conference, which contains two conclusions; the "indication of" conclusions contained in an anesthesia quality management worksheet; and the letter sent by the anesthesia department chair to Dr. Balaney in which additional information for the peer review was sought.

Though the memorandum decision is well-reasoned, we find the trial court's analysis to have been flawed, as it rests on an inaccurate premise. It is true that results of the peer-review process are not privileged; however, the court in its order has purportedly broadened the category of what constitutes "results" beyond the limits we find to be contained in the relevant case law. *Results* of a peer-review committee take the form of ultimate decisions made or actions taken by that committee, or the hospital, and include the revocation, modification or restriction of privileges, letters of resignation or withdrawal, and the revision of rules, regulations, policies and procedures for medical staff. See *Willing v. St. Joseph Hospital*, 176 Ill. App. 3d 737, 743-44 (1988). The recommendations and internal conclusions of peer-review committees, which may or may not lead to those results, *are not discoverable. Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 402 (1998); *Ekstrom v. Temple*, 197 Ill. App. 3d 120, 126 (1990); *Toth v. Jensen*, 272 Ill. App. 3d 382, 386 (1995); *Pritchard v. SwedishAmerican Hospital*, 191 Ill. App. 3d 388, 399 (1989); *Richter v. Diamond*, 108 Ill. 2d at 269-70; *Gleason v. St. Elizabeth Medical Center*, 135 Ill. App. 3d 92, 94-95 (1985). Indeed, the plain language of the Medical Studies Act provides that "recommendations" used in the course of internal quality control are to receive its protection.

Accordingly, we reverse that portion of the trial court's ruling which provides for the production of any portion of the above-referenced documents, all of which we find to be privileged under the Act in their entirety.

## B. Temporal Limitations

The second basis used by the trial court to support its decision is

the failure on the part of Northwest to come forward with evidence relating to the start and end dates of the peer-review process.

Preliminarily in this regard, it should be noted that the trial court did not initially request that such documentation be supplied. Instead, the court asked Northwest to provide a privilege log, the disputed documents for *in camera* inspection, and a copy of the complaint. In addition to the foregoing, Northwest provided the affidavit of its risk manager (Karla Ford), which stated that the documents in question: were generated in the process of investigations by the general surgery quality improvement audit and anesthesia quality improvement committees, were prepared solely for those two committees, and were used exclusively by those two committees (with the exception of the letter to Dr. Balaney). Plaintiff failed to submit any counteraffidavits to contradict those averments. When the facts within an affidavit are not contradicted with a counteraffidavit, they must be taken as true. *Flannery v. Lin*, 176 Ill. App. 3d 652, 658 (1988).

In this case, it was the trial court that *sua sponte* raised a challenge to the sufficiency of an affidavit that it did not require in the first place. Under these circumstances, Northwest was entitled to submit and have considered additional affidavits along with its motion to reconsider. See *Neade v. Portes*, 303 Ill. App. 3d 799, 805-06 (1999).

■ The foregoing discussion notwithstanding, the court did find that, even if the materials from the latter two affidavits were considered, Northwest had still failed to establish that the documents at issue were generated while the peer-review process was ongoing, as opposed to before or after the process took place. The court also correctly noted that the Medical Studies Act does not protect against disclosure of information generated before a peer-review process begins or after it ends. *Grandi v. Shah*, 261 Ill. App. 3d 551, 556 (1994). The burden of establishing the applicability of a privilege under the Act lies with the party who invokes it. *Roach*, 157 Ill. 2d at 41. Claims of privilege may be supported either by submitting the purportedly privileged materials for *in camera* inspection or by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to the particular documents being withheld. *Ekstrom*, 197 Ill. App. 3d at 127. In this case, Northwest did both.

■ We too have examined the disputed documents, which have been supplied under seal. Our examination has revealed that, affidavits and dates notwithstanding, none of the documents are subject to disclosure. This is because each of the documents establishes, by its own content, that it served an integral function in the peer-review information-gathering and decision-making process. See, *e.g.*, *Toth*, 272 Ill. App. 3d at 386. We agree with Northwest that the minutes

from the surgical audit committee and the general surgery QMI committee in which plaintiff's case is discussed self-evidently constitute "investigative and deliberative materials generated by a hospital committee in formulating its recommendations" (*Green v. Lake Forest Hospital*, 335 Ill. App. 3d 134, 138 (2002)), and they are therefore privileged under the Act. See *Ekstrom,* 197 Ill. App. 3d at 128 (minutes of qualified peer-review committees are protected from discovery under the Medical Studies Act).

As to the quality management/improvement worksheets, it is equally clear from their content that they were authored for the use of a peer-review committee and are thus entitled to protection from disclosure. *Toth,* 272 Ill. App. 3d at 386.

Finally we find that the letter from the anesthesia department chair to Dr. Balaney (the anesthesiologist in plaintiff's second surgery) is, by its own terms, privileged. The letter is a request from the chair, on behalf of the committee, for additional information to be used by the committee in its ongoing investigation. See *Stricklin v. Becan,* 293 Ill. App. 3d 886, 891 (1997) (a committee's attempt to generate new opinions or information for the committee's consideration is privileged). The fact that the letter was to an individual outside of the committee proper does not compromise its privileged status, since disclosure of information privileged under the Act has no effect on its nondiscoverability. 735 ILCS 5/8—2102 (West 1998).

## C. The Contempt Finding

■ Following the denial of its motion to reconsider, Northwest asked that the trial court find it in contempt for its continued refusal to turn over the disputed documents, so that it could test the propriety of the production order. Requesting that a trial court enter a contempt order is a proper procedure to seek immediate appeal of a trial court's discovery order. *Buckman v. Columbus-Cabrini Medical Center,* 272 Ill. App. 3d 1060, 1067 (1995). In this case, we find that Northwest's decision not to produce the documents in question was made in good faith and based upon sound legal arguments and was not contemptuous of the trial court's authority. See *Rounds v. Jackson Park Hospital & Medical Center,* 319 Ill. App. 3d 280, 289 (2001). We therefore vacate the order finding Northwest in contempt and imposing a $50 fine.

## Conclusion

For the foregoing reasons, we find that the circuit court abused its discretion in allowing for discovery of the disputed documents. We accordingly reverse the circuit court's ruling and remand this case for

further proceedings. We also vacate the contempt order and its accompanying fine.

Reversed in part and vacated in part; cause remanded.

GORDON, P.J., and O'MALLEY, J., concur.