# Illinois Official Reports

## Appellate Court

*Lindsey v. Butterfield Health Care II, Inc.*, 2017 IL App (2d) 160042

| | |
|---|---|
| Appellate Court Caption | JANNIE LINDSEY, as Plenary Guardian of the Person and Estate of Laura Lindsey, a Disabled Person, Plaintiff-Appellee, v. BUTTERFIELD HEALTH CARE II, INC., d/b/a Meadowbrook Manor of Naperville; THE BUTTERFIELD HEALTH CARE GROUP, INC., d/b/a Butterfield Health Care Group, Inc.; JIN RONG WANG; and VIVIAN SALVADOR, Defendants (Butterfield Health Care II, Inc., d/b/a Meadowbrook Manor of Naperville, Defendant-Appellant). |
| District & No. | Second District<br>Docket Nos. 2-16-0042, 2-16-0268 cons. |
| Filed | February 9, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-L-222; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part.<br>Cause remanded. |
| Counsel on Appeal | Clausen Miller P.C., of Chicago (Rodd E. Elges and Paul V. Esposito, of counsel), for appellant.<br><br>Susan Novosad and Nicole Schroeder, of Levin & Perconti, and Leslie J. Rosen, of Leslie J. Rosen Attorney at Law P.C., both of Chicago, for appellee. |

Panel JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Spence concurred in the judgment and opinion.

**OPINION**

¶ 1     In this consolidated appeal, the defendant Butterfield Health Care II, Inc., doing business as Meadowbrook Manor of Naperville (Meadowbrook), claims that certain of its documents are privileged and that the circuit court of Du Page County should not have ordered it to produce them during discovery in a lawsuit filed against it by plaintiff, Jannie Lindsey, as the guardian of Laura Lindsey. Meadowbrook insists that the Medical Studies Act (735 ILCS 5/8-2101 *et seq.* (West 2014)) and the Long-Term Care Peer Review and Quality Assessment and Assurance Protection Act (Quality Assurance Act) (745 ILCS 55/1 *et seq.* (West 2014)) protect it against having to disclose those documents. We agree with the trial court that the documents at issue should be produced.

¶ 2                                    BACKGROUND

¶ 3     On April 29, 2012, 88-year-old Laura Lindsey was allegedly injured during a fall while she was in the care of Meadowbrook, a nursing home. On May 9, 2012, employees of Meadowbrook completed a report regarding Laura's injury. On January 9, 2014, the plaintiff filed a complaint on Laura's behalf against Meadowbrook, sounding in negligence. The plaintiff subsequently issued written discovery requests to Meadowbrook, seeking all investigation reports. Meadowbrook refused to disclose the May 9, 2012, report, asserting that it was privileged pursuant to the Quality Assurance Act and the Medical Studies Act because it was "prepared for the Facility's Quality Assurance Committee."

¶ 4     On August 25, 2015, the plaintiff filed a motion to compel, arguing that the May 9, 2012, report was authored neither for the purpose of internal quality control nor by an internal quality control committee. Meadowbrook opposed the motion and gave the report to the trial court for its *in camera* review. In support of its objection, Meadowbrook filed an affidavit of Patricia Stambaugh, its administrator at the time of Laura's fall. Stambaugh averred that, as Meadowbrook's administrator, she was familiar with Meadowbrook's quality assurance protocols. Meadowbrook's quality assurance process required the completion of internal quality-assurance-investigation reports relating to incidents or accidents involving resident injuries. These reports were prepared for the purpose of being considered by Meadowbrook's quality assurance committee and/or its fall committee. (The fall committee met to determine ways that the risk of resident falls might be reduced.) The quality assurance committee met on a quarterly basis, and the fall committee met on a weekly basis.

¶ 5     On October 15, 2015, following a hearing and the trial court's *in camera* review of the report, the trial court ordered Meadowbrook to disclose the report. The trial court found that the report was simply factual and that it did not contain recommendations for improvement. The trial court further noted that there was no indication that the report had been reviewed by any committee.

¶ 6        On December 17, 2015, after Meadowbrook continued to refuse to disclose the report, the trial court found Meadowbrook in contempt. Meadowbrook appealed from that order. That appeal was docketed in this court as appeal No. 2-16-0042.

¶ 7        Thereafter, while updating discovery, Meadowbrook discovered six written witness statements that were prepared during the course of its internal investigation. It provided the plaintiff with a supplemental privilege log that included the statements, and it then filed a motion for a protective order. In support of its motion, Meadowbrook attached an affidavit of Stambaugh. She stated that the statements were prepared pursuant to Meadowbrook's quality assurance practices. On April 6, 2016, the trial court denied Meadowbrook's motion and ruled that the statements were not privileged. After Meadowbrook indicated that it would refuse to comply with the trial court's order, the trial court held Meadowbrook in contempt. Meadowbrook appealed from that order. That appeal was docketed in this court as appeal No. 2-16-0268. On May 5, 2016, this court consolidated Meadowbrook's two appeals for review.

¶ 8                                                     ANALYSIS

¶ 9        On appeal, Meadowbrook argues that the trial court erred in ordering disclosure of the May 9, 2012, report and the six witness statements. Meadowbrook argues that the report and the statements were privileged under both the Medical Studies Act and the Quality Assurance Act.

¶ 10       The burden of establishing a privilege is on the party seeking to invoke it. *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 41 (1993). The standard of review depends on the question that was answered in the trial court. *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 401 (1998). "Where, as here, the defendant challenges an order compelling discovery of information that the defendant believes to be subject to a statutory discovery privilege, the question is one of statutory construction, which is purely a question of law." *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 13. Thus, our review is *de novo*. *Id.*

¶ 11       This case is governed by the Quality Assurance Act (745 ILCS 55/1 *et seq.* (West 2014)). The Quality Assurance Act provides that proceedings and communications of a peer-review or a quality-assessment-and-assurance committee at a long-term care facility shall be privileged and confidential. 745 ILCS 55/4 (West 2014). No Illinois appellate court opinion has yet interpreted the Quality Assurance Act. We note, however, that the Quality Assurance Act contains language similar to that in the Medical Studies Act and covers a similar subject. Whereas the Quality Assurance Act pertains to quality assurance committees at long-term care facilities, the Medical Studies Act pertains to quality assurance committees at medical facilities such as hospitals. Under the *in pari materia* doctrine, statutes covering the same subject should be interpreted harmoniously. *Holly v. Montes*, 231 Ill. 2d 153, 161-62 (2008). Accordingly, we believe that it is appropriate to construe the Quality Assurance Act the same way that our courts have construed the Medical Studies Act.

¶ 12       The purpose of the Medical Studies Act is to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease. *Niven v. Siqueira*, 109 Ill. 2d 357, 366 (1985). The Medical Studies Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues. *Richter v. Diamond*, 108 Ill. 2d 265, 269 (1985). Documents generated specifically for the use of a peer-review committee receive protection under the Medical Studies Act. *Toth v. Jensen*, 272 Ill. App. 3d 382, 385 (1995). However, the Medical Studies Act does not protect against

disclosure of information generated before the peer-review process began. *Chicago Trust*, 298 Ill. App. 3d at 403.

¶ 13    This case is controlled by our supreme court's decision in *Roach* and the First District's decision in *Chicago Trust*. In *Roach*, the parents of a child with birth defects brought a medical malpractice claim against the hospital where the child was born and against the mother's obstetricians. The child's birth defects allegedly resulted from problems with the mother's anesthesia. After the child's birth, the hospital's chief of anesthesiology spoke with a nurse and a nurse anesthetist about the cause of the defects. These conversations occurred well before the monthly meeting of the hospital's peer-review committee. The parents sought to compel the chief of anesthesiology to disclose the content of these conversations. The hospital objected, citing the Medical Studies Act. The hospital asserted that, because the chief of anesthesiology was on the peer-review committee, his communications were privileged. The supreme court rejected the hospital's argument, holding that where the committee is composed of the hospital's medical staff, the committee must be involved in the peer-review process before the privilege will attach. *Roach*, 157 Ill. 2d at 40. The supreme court explained:

> "If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records." *Id.* at 41.

¶ 14    In *Chicago Trust*, a hospital patient's ventilator accidently became disconnected. He then lapsed into a coma and suffered brain damage. The plaintiff filed a malpractice action against the hospital and sought discovery of certain incident and situation reports that hospital staff members created shortly after the ventilator accident. The hospital refused to disclose the reports. The hospital asserted that the reports were prepared at the request of the "Hospital Oversight Committee" and were an integral part of the quality assurance process. *Chicago Trust*, 298 Ill. App. 3d at 400. The trial court ordered that the reports be disclosed. After the hospital still refused to produce the reports, the trial court held the hospital in contempt. *Id.* at 398-401.

¶ 15    On appeal, the reviewing court held that the trial court properly ruled that the reports at issue should be disclosed. *Id.* at 406. The court explained that documents initiated, created, prepared, or generated by a peer-review committee are privileged under the Medical Studies Act; conversely, documents that are created in the ordinary course of the hospital's medical business or for later corrective action by the hospital staff are not. *Id.* at 402-03. The court specifically rejected the hospital's suggestion that its oversight committee could invoke the Medical Studies Act's protection by declaring in advance that all incident documents prepared by the hospital staff were part of the peer-review process. *Id.* at 406. The court explained:

> "The Hospital's position goes too far. Such a policy, if effective, would swallow the rule. The [Medical Studies] Act would not create exceptions to disclosure. It would make everything confidential, except for the patient's own medical records." *Id.*

¶ 16    Here, Meadowbrook raises the same argument as did the hospital in *Chicago Trust*. Meadowbrook argues that the report and the witness statements made following the incident should be privileged because the report and the statements were eventually reviewed by the quality assurance committee. As Meadowbrook's argument is clearly without merit under the

Medical Studies Act (*Roach*, 157 Ill. 2d at 41; *Chicago Trust*, 298 Ill. App. 3d at 404), it is also without merit under the Quality Assurance Act.

¶ 17 Meadowbrook insists that the report and the statements at issue were created only so that they could be reviewed by its quality assurance committee. Meadowbrook maintains that, if not for the existence of the quality assurance committee, the documents at issue would have never been created. As such, it contends, the documents should be privileged. Meadowbrook's argument is unpersuasive. These documents are the same type of documents that the courts ordered disclosed in *Roach* and *Chicago Trust*. To adopt Meadowbrook's argument would circumvent the holdings in *Roach* and *Chicago Trust* and allow Meadowbrook to keep everything privileged except a resident's own medical records. That, we decline to do.

¶ 18 Meadowbrook further contends that, as the plaintiff did not submit any counteraffidavits, the affidavits it presented must be accepted as true. Although there is support for Meadowbrook's legal proposition (*Flannery v. Lin*, 176 Ill. App. 3d 652, 657-58 (1988)), it does not advance Meadowbrook's argument. In her affidavits, Stambaugh made clear that the report and the statements at issue were made prior to any peer-review committee meeting.

¶ 19 Finally, we note that "a contempt citation is an appropriate method for testing the propriety of a discovery order." *Id.* at 655. Here, the record reveals that Meadowbrook was not contemptuous of the trial court's authority. Rather, its refusal was made in good faith, as it merely sought appellate review of its unsuccessful assertions of privilege. Accordingly, we vacate the trial court's findings of contempt. See *People ex rel. Birkett v. City of Chicago*, 292 Ill. App. 3d 745, 756 (1997).

¶ 20                                                    CONCLUSION

¶ 21 The trial court correctly overruled Meadowbrook's objections to producing the disputed report and witness statements. The contempt orders are vacated. We remand the cause to the trial court for proceedings consistent with this opinion.

¶ 22 Affirmed in part and vacated in part.

¶ 23 Cause remanded.