# Illinois Official Reports

## Appellate Court

***Grosshuesch v. Edward Hospital*, 2017 IL App (2d) 160972**

| | |
|---|---|
| Appellate Court Caption | ABIGAIL KIERSTEN GROSSHUESCH, Independent Administrator of the Estate of Isabella Kitsen Zormelo, Deceased, Plaintiff-Appellee, v. EDWARD HOSPITAL, DU PAGE NEONATOLOGY ASSOCIATES, S.C., MICHAEL J. FITZGERALD, LESLIE FAROLAN, DEANNA L. HOLLEMAN-DURAY, ROBERT F. COVERT, and RAJEEV S. DIXIT, Defendants (Edward Hospital, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-16-0972 |
| Filed | September 5, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 15-L-464; the Hon. Ronald D. Sutter, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |
| Counsel on Appeal | Hugh C. Griffin, Matthew W. McElligott, and Mary N. Nielsen, of Hall Prangle & Schoonveld, LLC, of Chicago, for appellant.<br><br>Christopher P. Ford, of Law Office of Christopher P. Ford, of Chicago, for appellee. |

| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Hudson and Justice Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant Edward Hospital claims that certain of its documents are confidential and that the circuit court of Du Page County should not have ordered it to produce them during discovery in a civil case. Edward Hospital insists that the Medical Studies Act (735 ILCS 5/8-2101 *et seq.* (West 2014)) protects those documents from disclosure. We agree with the trial court that all the documents at issue should be produced.

¶ 2                                          BACKGROUND

¶ 3     On October 13, 2013, the plaintiff, Abigail Kiersten Grosshuesch, was admitted to Edward Hospital. She was 30 weeks' pregnant, and the baby, Isabella Kitsen Zormelo, was born that day. Isabella suffered from numerous medical issues, including necrotizing entercolitis. Isabella died on November 1, 2013.

¶ 4     In December 2013, the plaintiff contacted Edward Hospital's patient advocate and expressed concern about the care and treatment rendered to her and Isabella. Pursuant to Edward Hospital's medical staff quality committee (MSQC) charter and its peer-review policy (both enacted in 2008), the plaintiff's concern in conjunction with Isabella's death constituted "review indicators" resulting in a referral to the MSQC. Nancy Rosenbery, in her capacity as the MSQC liaison, consulted two expert peer reviewers—each a member of the hospital's medical staff with the same specialty as the physician whose care was being reviewed. One peer reviewer reviewed and commented on the obstetrical care given to the plaintiff, and one peer reviewer commented on the neonatal care given to Isabella. Rosenbery then entered her notes on each peer reviewer's input, including the reviewer's conclusion and/or requests for additional information, into an electronic database on February 24 and 25, 2014. The MSQC considered these notes when it met on March 5 and April 2, 2014.

¶ 5     On October 31, 2014, the plaintiff filed a complaint against Edward Hospital and other defendants. As pertinent to this appeal, on October 21, 2015, the plaintiff filed a second amended complaint, which included two counts. Count I was a wrongful-death action, seeking to recover for Isabella's death. Count II was a survival action, seeking to recover for injuries sustained by Isabella between the date of her birth and the date of her death. The plaintiff subsequently issued a written discovery request to Edward Hospital, seeking all documentation regarding the care of Isabella. Edward Hospital refused to disclose the notes Rosenbery authored on February 24 and 25, 2014, asserting that they were privileged pursuant to the Medical Studies Act.

¶ 6     On March 3, 2016, the plaintiff filed a motion to compel an *in camera* inspection of the allegedly privileged documents.

¶ 7     On August 3, 2016, the trial court conducted a hearing on the plaintiff's motion. In support of its claim of privilege, Edward Hospital submitted the affidavit of Christine Koman, the

system claims counsel for Edward-Elmhurst Health. She stated that the MSQC, in conjunction with Edward Hospital's medical executive committee of the medical staff, promulgated the peer-review policy. The purpose of that policy was to improve the overall quality of care rendered and to reduce morbidity and mortality. She further stated that, after the plaintiff expressed her concerns about the care that she and Isabella had received, the matter was referred to the MSQC for peer review pursuant to the peer-review policy. Koman concluded that the information and conclusions resulting from the peer-review investigation—which were later provided to the MSQC for its consideration and evaluation, consistent with the peer-review policy—were part of the internal quality-control process and therefore privileged.

¶ 8        At the close of the hearing, the trial court ruled that the notes Rosenbery had authored on February 24 and 25, 2014, which contained information acquired before the MSQC met, must be produced because Koman's affidavit was insufficient to raise a privilege. The trial court explained that there was nothing in Koman's affidavit showing when the MSQC requested the investigation to begin or which member of the MSQC requested the investigation to begin. The trial court further found that Koman's affidavit did not establish that the MSQC was engaged in the peer-review process for this occurrence prior to the March 2014 meeting.

¶ 9        On August 19, 2016, Edward Hospital filed a motion to reconsider and supported it with a second affidavit from Koman. In that affidavit, Koman stated that the MSQC had instructed Rosenbery, in her capacity as the MSQC liaison, to assist it by coordinating the investigation into the plaintiff's concerns for the purpose of quality control and improvement and the reduction of morbidity and mortality. As part of her investigation, Rosenbery worked with consultants who reviewed the care that the plaintiff and Isabella had received. On February 24 and 25, 2014, Rosenbery authored notes based on her investigation. Koman further asserted that Rosenbery's notes "served an integral function in the peer review gathering and decision making process and serve as documentation vital to the process of improving the quality and care rendered at Edward Hospital."

¶ 10        On October 12, 2016, following a hearing, the trial court denied Edward Hospital's motion to reconsider.

¶ 11        On October 26, 2016, after Edward Hospital continued to refuse to disclose Rosenbery's notes, the trial court found Edward Hospital in contempt and imposed a fine of $1 per day until Edward Hospital complied with the trial court's order. Edward Hospital appeals from that order.

¶ 12                                                    ANALYSIS

¶ 13        On appeal, Edward Hospital argues that the trial court erred in ordering disclosure of Rosenbery's notes from February 24 and 25, 2014, because those notes are privileged under the Medical Studies Act. Specifically, Edward Hospital contends that the MQSC's peer-review policy provides that, if certain indicators are met (such as the death of a patient and a concern raised about that death), then an investigation begins. Edward Hospital insists that, because the peer-review policy authorized the investigation, everything that was discovered through that investigation is privileged under the Medical Studies Act.

¶ 14        Whether the Medical Studies Act's privilege applies is a question of law, which is reviewed *de novo*; however, whether specific materials are part of an internal quality-control process "is a factual question," on which the defendant bears the burden. *Berry v. West Suburban Hospital Medical Center*, 338 Ill. App. 3d 49, 53-54 (2003). The trial court's factual

determination will not be reversed "unless it is against the manifest weight of the evidence." *Id.* at 54. A decision is against the manifest weight of the evidence if it is unreasonable, arbitrary, or not based upon the evidence. *Freese v. Buoy*, 217 Ill. App. 3d 234, 244 (1991).

¶ 15 The purpose of the Medical Studies Act is to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease. *Niven v. Siqueira*, 109 Ill. 2d 357, 366 (1985). The Medical Studies Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues. *Richter v. Diamond*, 108 Ill. 2d 265, 269 (1985). Documents generated specifically for the use of a peer-review committee receive protection under the Medical Studies Act. *Toth v. Jensen*, 272 Ill. App. 3d 382, 385 (1995). However, the Medical Studies Act does not protect against disclosure of information generated before the peer-review process began. *Chicago Trust Co. v. Cook County Hospital*, 298 Ill. App. 3d 396, 403 (1998).

¶ 16 We find that Edward Hospital's argument is contrary to over 20 years of precedent establishing that the Medical Studies Act cannot be used to conceal relevant evidence that was created before a quality-assurance committee or its designee authorized an investigation into a specific incident. See, *e.g.*, *Roach v. Springfield Clinic*, 157 Ill. 2d 29 (1993); *Chicago Trust*, 298 Ill. App. 3d 396; *Berry*, 338 Ill. App. 3d 49; *Kopolovic v. Shah*, 2012 IL App (2d) 110383; *Lindsey v. Butterfield Health Care II, Inc.*, 2017 IL App (2d) 160042; *Nielson v. SwedishAmerican Hospital*, 2017 IL App (2d) 160743.

¶ 17 In *Roach*, the parents of a child with birth defects brought a medical malpractice claim against the hospital where the child was born and against the mother's obstetricians. The child's birth defects allegedly resulted from problems with the mother's anesthesia. After the child's birth, the hospital's chief of anesthesiology spoke with a nurse and a nurse anesthesiologist about the cause of the defects. These conversations occurred well before the monthly meeting of the hospital's peer-review committee. The parents sought to compel the chief of anesthesiology to disclose the contents of these conversations. The hospital objected, citing the Medical Studies Act. The hospital asserted that, because the chief of anesthesiology was on the peer-review committee, his communications were privileged. The supreme court rejected the hospital's argument, holding that, where the committee is composed of the hospital's medical staff, the committee must be involved in the peer-review process before the privilege will attach. *Roach*, 157 Ill. 2d at 32-40. The supreme court explained:

> "If the simple act of furnishing a committee with earlier-acquired information were sufficient to cloak that information with the statutory privilege, a hospital could effectively insulate from disclosure virtually all adverse facts known to its medical staff, with the exception of those matters actually contained in a patient's records." *Id.* at 41.

¶ 18 In *Chicago Trust*, a hospital patient's ventilator accidently became disconnected. He then lapsed into a coma and suffered brain damage. The plaintiff filed a malpractice action against the hospital and sought discovery of certain incident and situation reports that hospital staff members created shortly after the ventilator accident. The hospital refused to disclose the reports. The hospital asserted that the reports were prepared at the request of the hospital oversight committee and were an integral part of the quality-assurance process. The trial court ordered that the reports be disclosed. After the hospital still refused to produce the reports, the trial court held the hospital in contempt. *Chicago Trust*, 298 Ill. App. 3d at 398-401.

¶ 19    On appeal, the reviewing court held that the trial court properly ruled that the reports at issue should be disclosed. *Id.* at 406. The court explained that documents initiated, created, prepared, or generated by a peer-review committee are privileged under the Medical Studies Act; conversely, documents that are created in the ordinary course of the hospital's medical business or for later corrective action by the hospital staff are not. *Id.* at 402-03. The court specifically rejected the hospital's suggestion that its oversight committee could invoke the Medical Studies Act's protection by declaring in advance that all incident documents prepared by the hospital staff were part of the peer-review process. *Id.* at 406. The court explained:

> "The Hospital's position goes too far. Such a policy, if effective, would swallow the rule. The [Medical Studies] Act would not create exceptions to disclosure. It would make everything confidential, except for the patient's own medical records." *Id.*

¶ 20    In *Berry*, the plaintiff sought to compel the defendant hospital to produce a letter written to the chair of the hospital's obstetrics and gynecology department by a physician involved in the incident at issue, regarding the facts of the incident. The hospital claimed that the letter was privileged under the Medical Studies Act and refused to produce it. Specifically, the hospital argued that the submission of such letters or reports was the prescribed method of initiating the internal quality-control process at the hospital. The appellate court rejected this argument, finding that the letter was not privileged as a report or statement used in the course of internal quality control, because the hospital's procedure did not transform letters or reports written by doctors into "information of" a quality-control committee, as required under the Medical Studies Act. *Berry*, 338 Ill. App. 3d at 51-54. "Even if the *** letter notified [the department chair, as a representative] of the investigatory committee[,] of a potential quality control issue, the [Medical Studies] Act's privilege does not apply because the *** letter was information of the Hospital's staff rather than information of any committee, peer-review or otherwise." *Id.* The appellate court commented that the physician who wrote the letter could not successfully argue that she was acting on behalf of the department or a quality-control committee when she wrote the letter because the department clearly was not aware of the incident until after it received the letter and it did not meet to discuss the letter until months after the letter was written. *Id.* at 56.

¶ 21    In *Kopolovic*, this court held that a memorandum written by an anesthesiologist who was not a member of any peer-review or quality-control committee, expressing his concerns about alleged deception concerning a recent surgical procedure by a plastic surgeon, was not privileged under the Medical Studies Act. *Kopolovic*, 2012 IL App (2d) 110383, ¶ 36. The memo was written at the suggestion of the president and another member of the board of the defendant surgical center, and it was addressed to the board, the consulting committee (the center's peer-review and credentialing committee), and the surgeon. *Id.* ¶ 7. We rejected the anesthesiologist's argument that the memo was privileged because he sought to bring to light practices that he viewed as unethical. *Id.* ¶ 21. We noted that the case law (*Roach* and *Grandi v. Shah*, 261 Ill. App. 3d 551 (1994)) held that the privilege applied to information generated or created by a committee *already engaged* in the peer-review or quality-control process with regard to the incident at issue. *Kopolovic*, 2012 IL App (2d) 110383, ¶¶ 24-26. Even though the content of the memo was in harmony with the promotion of quality control, it could not be privileged where it was not generated by a committee of the type described in the statute. *Id.* ¶ 26. We also rejected the anesthesiologist's argument that, because he was advised to write the memo by members of the board, he was engaged in ongoing quality control and, thus, the

memo must be considered information of the board. *Id.* ¶ 27. We expressed two reasons for our holding. First, citing *Roach*, *Berry*, and *Anderson v. Rush-Copley Medical Center, Inc.*, 385 Ill. App. 3d 167 (2008), we noted chronology. Specifically, we determined that, when the memo was written, the board was not already engaged in the peer-review or quality-control process regarding the incident at issue. *Kopolovic*, 2012 IL App (2d) 110383, ¶¶ 28-30. Second, relying on *Roach* and *Pietro v. Marriott Senior Living Services, Inc.*, 348 Ill. App. 3d 541 (2004), we concluded that the actions of individual board members are not actions of the board as a whole and that the evidence did *not* reflect that the board members were *authorized* by the board to investigate, "outside the review process conducted at monthly meetings," the anesthesiologist's concerns before he wrote his memo. *Kopolovic*, 2012 IL App (2d) 110383, ¶¶ 31-32.

¶ 22    In *Lindsey*, in a negligence action against a nursing home, this court construed the Long-term Care Peer Review and Quality Assessment and Assurance Protection Act (745 ILCS 55/1 *et seq.* (West 2014)) by looking at Medical Studies Act case law and held, following *Roach* and *Chicago Trust*, that internal quality-assurance investigation reports relating to incidents or accidents involving resident injuries and required under a nursing home's quality-assurance process for consideration only by the quality-assurance committee were not privileged. *Lindsey*, 2017 IL App (2d) 160042, ¶¶ 11-13. We explained that a policy "declaring in advance" that reports are part of the peer-review process " 'goes too far,' " as the reports at issue constituted earlier-acquired information and were made before any peer-review committee met. *Id.* ¶¶ 15, 16 (quoting *Chicago Trust*, 298 Ill. App. 3d at 406).

¶ 23    This court most recently revisited the Medical Studies Act in *Nielson*. There, the plaintiff underwent a scheduled outpatient surgery at the defendant's hospital in Belvidere to remove a vaginal cyst. During the surgery, the plaintiff's bladder was injured. The plaintiff was then transported on an emergency basis to the defendant's hospital in Rockford for surgical repair of her bladder. Three nurses involved either in the plaintiff's original or second surgery each prepared a quality control report (QCR) between December 17 and 20, 2013. The defendant's director of risk management averred that the defendant's medical staff bylaws established various quality-assurance committees, including the quality and safety committee (QA/I). The QA/I requested that certain medical information be collected on its behalf in the form of QCRs. The QA/I developed the QCR template in 1999 in an effort to comply with the Medical Studies Act. QCRs were gathered at the direction and (standing) request of the QA/I. *Nielson*, 2017 IL App (2d) 160743, ¶¶ 4-9.

¶ 24    On January 29, 2015, the plaintiff filed a suit against the defendant, sounding in negligence. The plaintiff subsequently sought to compel the defendant to produce the three QCRs. The defendant refused, arguing that the documents were protected from discovery pursuant to the Medical Studies Act. The trial court ordered the defendant to disclose the documents. *Id.* ¶¶ 22-24.

¶ 25    On appeal, this court affirmed. We determined that the QCRs at issue were effectively incident reports because they did not commence an investigation and because they were used for the dual purposes of quality assurance and risk management. We therefore explained that, in light of the holdings in *Roach*, *Lindsey*, *Chicago Trust*, *Kopolovic*, and *Berry*, which preclude designating in advance that certain materials are generated by and for a quality-assurance or peer-review committee, and in light of the case law holding that the

statutory privilege does not apply where the materials are used for the dual purposes of quality assurance and risk management, the QCRs were not privileged. *Id.* ¶¶ 75, 80.

¶ 26    Based on the foregoing authorities, the Medical Studies Act does not insulate from discovery documents that were generated before a peer-review committee or its designee authorized an investigation of a specific incident. Thus, there is no merit to Edward Hospital's claim that the policies its MSQC enacted in 2008 were sufficient to shield from discovery Rosenbery's notes on the peer-reviewers' input regarding the care that the plaintiff and Isabella received in 2013.

¶ 27    Edward Hospital attempts to distinguish the above cases on the basis that they involved different types of documents than are at issue here. Specifically, Edward Hospital argues that those cases involved a hallway conversation (*Roach*), a memorandum (*Kopolovic*), a letter written outside the peer-review process (*Berry*), witness statements (*Lindsey*), incident reports (*Chicago Trust*), or dual-purpose reports (*Nielson*). By contrast, the hospital insists, Rosenbery's notes on the peer reviewers' input are more similar to the information that was found to be privileged in *Ardisana v. Northwest Community Hospital, Inc.*, 342 Ill. App. 3d 741 (2003), *Eid v. Loyola University Medical Center*, 2017 IL App (1st) 143967, and *Anderson*, 385 Ill. App. 3d 167.

¶ 28    The distinctions that Edward Hospital is trying to draw are without significance. The fact remains that the documents at issue herein, like those in the foregoing authorities, were generated before any peer-review committee or its designee authorized an investigation into a specific incident. Furthermore, we find the hospital's reliance on *Ardisana*, *Eid*, and *Anderson* to be misplaced.

¶ 29    In *Ardisana*, the trial court directed a hospital to provide, for an *in camera* review, a privilege log, a copy of the documents in dispute, and a copy of the complaint. *Ardisana*, 342 Ill. App. 3d at 744. The hospital filed the requested documents and, in addition, filed the affidavit of its risk manager. *Id.* The risk manager's affidavit indicated that the documents at issue were generated in conjunction with investigations by the general surgery quality audit and anesthesia quality improvement audit committees. She identified the following documents as being privileged:

> "1. A quality management worksheet prepared for the surgical quality audit committee, dated February 23, 2000, and minutes of audit committee meetings held on February 23 and April 19, 2000, at which plaintiff's care was discussed.

> 2. A quality management worksheet prepared for the anesthesia department quality audit committee dated May 10, 2000, minutes of an audit committee meeting held May 10, 2000, and a letter from the chairman of the audit committee to Dr. Subhash Balaney dated June 5, 2000, requesting certain additional information about plaintiff's care." *Id.*

¶ 30    The trial court ruled that all of the disputed documents were discoverable, in part because the hospital failed to establish when the peer-review process commenced and ended. *Id.* Thereafter, the hospital filed a motion to reconsider, attaching additional affidavits with information regarding the start and end dates of the internal review processes and information as to the steps taken to preserve the confidentiality of the documents generated during the process. *Id.* at 745. On appeal, the reviewing court reversed for two reasons. First, the reviewing court held that the documents at issue were privileged on the basis that they constituted recommendations, not results used in the course of internal quality control. *Id.* at 747. Second, the reviewing court determined that the documents were privileged because they

"served an integral function in the peer-review information-gathering and decision-making process," noting that an affidavit showed that they were generated in the process of investigations by the committees and solely for their use. *Id.* at 748. In so ruling, the reviewing court explicitly noted that the Medical Studies Act does not protect against disclosure of information generated before a peer-review process begins or after it ends. *Id.*

¶ 31    Here, Edward Hospital points to the language in *Ardisana* that refers to results being discoverable but recommendations not being discoverable, and it argues that recommendations are at issue here. It also argues that *Ardisana* is analogous because that case involves documents, like those here, that "served an integral function in the peer-review information-gathering and decision-making process." *Id.* The hospital's argument, however, overlooks the context of *Ardisana*. In *Ardisana*, the reviewing court explained that the privilege does not attach to documents generated before a peer-review process begins or after it ends. *Id.* Thus, it is apparent that the reviewing court found that the documents at issue were privileged because they were created while the quality audit committee was meeting or before its investigation had ended. As such, the instant case is distinguishable from *Ardisana* because the documents at issue here were produced before the MSQC authorized an investigation into the incident at issue.

¶ 32    In *Eid*, the reviewing court held that information generated for use by a hospital peer-review committee was privileged where a committee designee, pursuant to his authority under hospital bylaws, began an investigation of a patient's treatment and instructed another committee member to collect information. *Eid*, 2017 IL App (1st) 143967, ¶ 39. Specifically, after a child died following surgery, the hospital's risk manager, who was also a member of the peer-review committee, began contacting individuals to preserve records. She also contacted the chair of the peer-review committee, who instructed her to investigate the incident on the committee's behalf, from a quality perspective. *Id.* ¶ 16. The chair averred that the committee directed and empowered individuals to assemble information about incidents and to report the information back to the committee for its use in evaluating and improving the quality of patient care. The risk manager, he further averred, was such a designee in this instance. *Id.* ¶¶ 17-18. The First District upheld the trial court's finding that the privilege applied to documents generated by the risk manager *after* she obtained the chair's directive on the committee's behalf. *Id.* ¶ 39. The court noted that the 1995 amendment to the Medical Studies Act provided that " 'designees' " could create or generate information covered by the statute. *Id.* ¶ 43. Thus, if the risk manager and the chair were designees under the Medical Studies Act, the documents were privileged. *Id.* ¶ 44. In assessing this question, the court rejected the plaintiffs' argument that the privilege does not apply to information generated before the peer-review committee, *acting as a whole*, either becomes aware of an incident or is engaged in the peer-review process. *Id.* ¶ 49. The court noted that the statute was amended after the *Roach* decision and that subsequent cases citing *Roach* either do not acknowledge the 1995 amendment or do not involve situations where an individual was authorized to act on behalf of a peer-review committee. *Id.* (citing *Chicago Trust*, *Pietro*, *Anderson*, and *Kopolovic*). The court held that the privilege applied to the documents generated by the risk manager *after* she obtained the chair's directive on the committee's behalf, where the risk manager's and the chair's affidavits established that the committee was a peer-review committee covered by the Medical Studies Act and where the chair used his authority to commence the committee's investigation after being informed that the incident at issue might warrant peer-review proceedings. *Id.* ¶ 53.

¶ 33    *Eid* thus stands for the proposition that, where a member of a peer-review committee, acting on its behalf, authorizes an investigation by a designee into a potential quality issue, any documents generated thereafter as part of the investigation are privileged. It is distinguishable from this case because a designee was not declared in *Eid* until *after* the committee became aware of the incident and authorized the investigation. Here, Edward Hospital is relying on policies its MSQC enacted *five years before the incident at issue* to support its claim that certain documents should be privileged.

¶ 34    In *Anderson*, the decedent died after being admitted to the defendant hospital. Nine days later, the hospital's peer-review committee met to address the medical care that the decedent had received. *Anderson*, 385 Ill. App. 3d at 169. The hospital's risk manager testified in her discovery deposition that the members of the committee were assigned to conduct research concerning issues involving the decedent's medical care and that this research resulted in locating and using medical journal articles related to the decedent's medical care. *Id.* at 171. The plaintiff sought to have the hospital disclose the medical journal articles that the committee had relied upon. The trial court agreed that the medical journal articles were not privileged under the Medical Studies Act because those articles had not been generated by a hospital committee in formulating its recommendations. *Id.* On appeal, this court reversed. *Id.* at 178. We explained that the medical journal articles were privileged because they reflected the committee's internal review process, including information-gathering and deliberations. *Id.* at 175. We additionally found that, as "the medical journal articles could not reference the care administered to decedent, because they existed before [she] sought treatment," "applying the privilege to the medical journal articles would not frustrate the [Medical Studies] Act's goal of improved patient care, because doing so would not conceal any 'adverse facts' known to defendant's medical staff about decedent's care." *Id.* at 177.

¶ 35    *Anderson* is distinguishable from the instant case because in that case the peer-review committee had already started its investigation when it located the articles in question. In the present case, when Rosenbery wrote her notes, the MSQC was not engaged in an investigation of the care that the plaintiff and Isabella had received.

¶ 36    Finally, we note that "a contempt citation is an appropriate method for testing the propriety of a discovery order." *Flannery v. Lin*, 176 Ill. App. 3d 652, 655 (1988). Here, the record reveals that Edward Hospital was not contemptuous of the trial court's authority. Rather, its refusal was made in good faith, as it merely sought appellate review of its unsuccessful assertions of privilege. Accordingly, we vacate the trial court's finding of contempt. See *People ex rel. Birkett v. City of Chicago*, 292 Ill. App. 3d 745, 756 (1997).

¶ 37                                          CONCLUSION

¶ 38    The decision of the circuit court of Du Page County requiring Edward Hospital to produce the disputed documents is affirmed. The contempt order is vacated. We remand for proceedings consistent with this opinion.

¶ 39    Affirmed in part and vacated in part; cause remanded.