DORIS EKSTROM et al., Plaintiffs-Appellees, v. RICHARD TEMPLE et al., Defendants (Community Hospital et al., Contemnors-Appellants).

Second District   No. 2—89—0547

Opinion filed March 29, 1990.

122

Hugh C. Griffin and Harold L. Jacobson, both of Lord, Bissell & Brook, of Chicago (David P. Faulkner, of counsel), for appellants.

Robert A. Clifford and Keith A. Hebeisen, both of Robert A. Clifford & Associates, of Chicago (Robert P. Sheridan, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Contemnors, Community Hospital (hospital) and its attorney, David P. Faulkner, appeal from an order of the circuit court of Kane County holding them in contempt and fining each $25 for failure to comply with a prior order compelling production of certain documents. On appeal, contemnors contend that the production order is improper because it requires production of documents which are subject to various privileges against discovery.

Plaintiffs, Doris and Karl Ekstrom, brought this medical malpractice action seeking recovery for injuries allegedly sustained by Mrs. Ekstrom when, following bilateral breast biopsy surgery, she developed toxic shock syndrome necessitating amputation of her legs and numerous fingers. Mr. Ekstrom sought recovery for loss of consortium. Plaintiffs' first amended complaint names the hospital, several physicians and their employers, and two suture manufacturers as defendants.

On April 28, 1988, plaintiffs filed a request to produce containing 24 numbered paragraphs, seeking various documents from the hospital. Subsequently, the hospital filed a written response objecting on various grounds to the requests in 21 of the 24 paragraphs. Thereafter, in June 1988, plaintiffs filed a motion to compel production in accordance with the request. At a hearing on the motion to compel, the hospital continued to assert its objection that the production request encompassed documents protected under various privileges. In support of its assertion, the hospital tendered three documents to the trial court for *in camera* inspection. The hospital provided no specific information regarding the content or nature of documents being withheld. At the close of the hearing, the trial court took the matter under advisement, subsequently granting plaintiffs' motion to compel, and ordering production of the requested materials.

Thereafter, the hospital partially complied with the request but continued to assert that certain portions of the request were improper. On April 19, 1989, plaintiffs filed a motion for a rule to show cause. The hospital, in turn, filed a motion to reconsider the prior order. Following a hearing on these motions, the trial court issued the contempt order against the hospital and its attorney, Faulkner.

On appeal, contemnors take issue with 10 paragraphs in plaintiffs' request to produce. The contempt order was additionally premised on noncompliance with several other paragraphs which contem-

nors no longer dispute. The paragraphs which contemnors contend are improper are requests for:

"1. Any and all records regarding infection control at Community Hospital in December, 1985, including but not limited to hospital compliance with JCAH guidelines and standards. These records should include but not be limited to records regarding the operating room, hospital personnel, equipment and suture materials;

\* \* \*

4. Records of any and all cases of staph aureus infection or contamination at Community Hospital;

5. A list of privileges for Drs. Guynn, Temple and Cladis including a list of privileges and the applications for privileges for the years 1980-1985;

\* \* \*

9. Any written guidelines of the Infection Control Committee and the names of all members of the Infection Control Committee for the years 1980-1985;

\* \* \*

12. Any and all investigation reports or other written materials regarding the efforts made to retrospectively verify the sterility of the operating room appliances, instruments and equipment during the surgery of Doris Ekstrom;

13. Any and all statements or interview summaries of people employed by the hospital or doctors obtained in connection with the retrospective investigation of the biopsy surgery of Doris Ekstrom;

\*\*\*

15. Records regarding any and all breast biopsy procedures performed by Dr. Guynn at Community Hospital from 1980 to December, 1985 in which Dr. Temple assisted;

\*\*\*

17. Any and all infection control records from October, 1985, November, 1985, December, 1985 and January 1986.

\* \* \*

20. Any and all documents disclosing why the penrose drain was opened and not used during Mrs. Ekstrom's bilateral breast procedures.

\* \* \*

23. Any and all documents regarding the December 6, 1985, D & C procedure performed by Dr. Temple, including but not limited to records revealing time of operation, whether

or not there was any subsequent infection, identification of the operating room, other personnel involved, etc."

With respect to paragraph No. 15, the trial court ordered that patients' names be deleted from the records produced.

Contemnors maintain that each request violates one or more of the following: (1) the privilege established under section 8—2101 *et seq.* of the Code of Civil Procedure (Medical Studies Act) (Ill. Rev. Stat. 1987, ch. 110, par. 8—2101 *et seq.*); (2) the physician-patient privilege (Ill. Rev. Stat. 1987, ch. 110, par. 8—802); and (3) the attorney-client privilege and work product doctrine (107 Ill. 2d R. 201(b)(2)) and the corollary principle protecting communications of an insured to an insurer with an obligation to defend.

We first consider contemnors' objections based on the Medical Studies Act. That enactment provides, in pertinent part:

"§8—2101. Information obtained. All information, interviews, reports, statements, memoranda or other data of *** allied medical societies, *** or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality of care, or granting, limiting or revoking staff privileges, except that in any hospital proceeding to decide upon a physician's staff privileges, or in any judicial review thereof, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.

§8—2102. Admissibility as evidence. Such information, records, reports, statements, notes, memoranda, or other data, shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person. The disclosure of any such information or data, whether proper, or improper, shall not waive or have any effect upon its confidentiality, nondiscoverability, or nonadmissibility." Ill. Rev. Stat. 1987, ch. 110, pars. 8—2101, 8—2102.

Our supreme court has stated:

"The purpose of the Act is to encourage candid and voluntary studies and programs used to improve hospital conditions

and patient care or to reduce the rates of death and disease. To promote these goals the legislature provided that any materials used in such studies or programs shall be confidential." *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937.

Contemnors maintain that the paragraphs Nos. 1, 9, 12, 13, 17 and 20 are improper because they reach protected communications regarding infection control. Contemnors cite *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 522 N.E.2d 273, in support of their argument. In that case, it was held, in pertinent part, that pathology reports initiated by a hospital's environmental services committee, a committee primarily concerned with infection control, infection control evaluation and infection control studies, were privileged and not subject to discovery. 167 Ill. App. 3d at 846, 522 N.E.2d at 276.

■ We agree that documents reflecting the investigations and deliberations of committees which monitor infection control in the course of internal quality control, or for the purpose of reducing morbidity or mortality or improving patient care, are nondiscoverable. Nonetheless, we are not in complete agreement with contemnors as to the application of that principle to the production request in the instant case.

■ Paragraph No. 1 calls for production of "[a]ny and all records regarding infection control at Community Hospital in December, 1985." We agree with contemnors that they cannot be compelled pursuant to this request to produce materials generated by a committee of the type described above. However, paragraph No. 1 is not limited to such committee data but broadly seeks materials pertaining to infection control. Nothing in the record suggests that all documents in the hospital's control that are encompassed by this request would necessarily be privileged. It is certainly conceivable that the hospital might maintain records pertaining to infection control, which are generated for purposes other than the type of internal quality control and medical study activities that the Medical Studies Act was designed to promote. We see no reason why such materials, if they exist, should not be discoverable.

We note at this point that plaintiffs appear to misunderstand the position contemnors have taken with respect to the scope of the privilege. Plaintiffs contend that contemnors seek to apply the privilege to any document that comes into the hands of a committee specified under the Medical Studies Act, thus allowing a hospital to shield any document by submitting it to such a committee. Contemnors advance no such argument. However, as we explain below, we disagree with

the position contemnors have taken.

■■ Contemnors' argument appears to be that because some privileged materials fall within the scope of the request, it is improper and need not be complied with to any extent, such that even unprivileged materials encompassed by it need not be produced. We find no persuasive authority for such a proposition. Contemnors have cited *Pritchard v. SwedishAmerican Hospital* (1989), 191 Ill. App. 3d 388, 547 N.E.2d 1279, in this regard. However, that case involved a trial court order specifically requiring disclosure of privileged materials. While the request here might encompass privileged materials, it is not on its face directed at a privileged area, and it must be complied with to the extent that nonprivileged materials fall within its scope.

■■ ■ Generally, "[o]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. 'His mere assertion that the matter is confidential and privileged will not suffice.' " (*Cox v. Yellow Cab Co.* (1975), 61 Ill. 2d 416, 419-20, 337 N.E.2d 15, quoting *Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 42, 132 N.E.2d 532, 536.) We believe that contemnors should have supported the claim of privilege either by submitting the purportedly privileged materials for *in camera* inspection or by submitting affidavits setting forth facts sufficient to establish the applicability of the privilege to particular documents being withheld. Moreover, contemnors should have produced any nonprivileged materials encompassed by the request.

Except for the submission of three documents for *in camera* inspection, two of which have subsequently been turned over to plaintiffs, contemnors did not take such action but merely objected that privileged materials were within the purview of the request and it was therefore improper. Consequently, the record is for the most part devoid of any information concerning the nature and content of documents being withheld, and the trial court, having no basis for determining the existence of any privilege, properly ordered compliance with the production request.

The same reasoning applies to paragraphs Nos. 12, 13, 17 and 20. These do not on their face invade privileged areas (see *Mennes v. South Chicago Community Hospital* (1981), 100 Ill. App. 3d 1029, 1032, 427 N.E.2d 952), and contemnors had the burden of establishing the applicability of the privilege and producing all nonprivileged materials. To accept contemnors' position would put an undue burden on litigants seeking discovery against a hospital. Such litigants will not in all cases be familiar enough with a particular hospital's inter-

nal organization and procedures to recognize when a discovery request will invade a privileged area.

■ We do note, however, that contemnors submitted minutes of several meetings of the hospital's infection control committee for *in camera* inspection to the trial court and to this court. We have reviewed these documents and agree with contemnors that they are within the Medical Studies Act privilege. (See *Sakosko v. Memorial Hospital* (1988), 167 Ill. App. 3d 842, 844-45, 522 N.E.2d 273.) The trial court erred in ordering their production, and its order must be reversed in this respect.

■ Contemnors also maintain that paragraph No. 9, which requests "[a]ny written guidelines of the Infection Control Committee and the names of all members of the Infection Control Committee for the years 1980-1985," invades the privilege under the Medical Studies Act. The infection control committee's guidelines clearly fall within the language of the Medical Studies Act, and according them protection is consistent with the Act's purpose of encouraging candid and voluntary studies. (See *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366, 487 N.E.2d 937.) Thus, because this request is improper on its face, the trial court erred in requiring production of the guidelines. We find no error, however, in compelling disclosure of the identities of the infection control committee. Such information is not generated by the infection control committee but by whatever body of the hospital selects the committee's members. Moreover, where the proceedings and deliberations of the infection control committee are protected, we believe protecting the identities of the members adds little to the goal of candor.

■ Contemnors, citing *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 487 N.E.2d 937, contend that paragraph No. 1 is improper because it requests materials pertaining to compliance with Joint Commission on Accreditation of Hospitals (JCAH) guidelines and standards. In *Niven*, the plaintiffs obtained a subpoena in the trial court asking for documents in the possession of the JCAH (which was not a party to the action) pertaining to the accreditation of the defendant hospital. Our supreme court held that the JCAH is an "allied medical society" within the meaning of the Medical Studies Act and the materials in its possession pertaining to accreditation were nondiscoverable under the Act. 109 Ill. 2d at 366-68, 487 N.E.2d at 942-43.

■ The instant case is distinguishable. Here, the materials are sought from the hospital itself, not the JCAH. Also, the documents sought are "records regarding infection control *** including *** hospital compliance with JCAH guidelines and standards." Plaintiffs

do not specifically seek documents pertaining to accreditation, and contemnors have not established that the records requested would necessarily be generated by a committee of the type to which the Medical Studies Act privilege is applicable as part of a medical study. Contemnors have not adequately shown the applicability of the privilege to any particular materials sought by this request, and consequently, the trial court committed no error in ordering production.

Contemnors maintain that paragraph No. 5, which requests "[a] list of privileges for Drs. Guynn, Temple and Cladis and the applications for privileges for the years 1980-1985," is improper since on its face it calls for material pertaining to the peer review process. Contemnors appear only to take issue with the latter portion of this request seeking production of the doctors' *applications* for privileges. They do not object that the list of privileges granted are not discoverable as they represent action taken in consequence of the peer review process, which may be disclosed without compromising the confidentiality of the peer review process itself. See *Richter v. Diamond* (1985), 108 Ill. 2d 265, 269, 483 N.E.2d 1256; *Pritchard v. SwedishAmerican Hospital* (1989), 191 Ill. App. 3d 388, 399, 547 N.E.2d 1279.

Contemnors maintain, however, that applications for hospital privileges are protected under the Act. Contemnors insist that *Willing v. St. Joseph Hospital* (1988), 176 Ill. App. 3d 737, 531 N.E.2d 824, which reaches the opposite conclusion, was wrongly decided. *Willing* held that applications for privileges, because they are antecedent to the peer review process, are not protected under the Medical Studies Act. (176 Ill. App. 3d at 743, 531 N.E.2d at 828.) We see no reason to depart from this holding. Contemnors maintain that if such applications are discoverable, the Medical Studies Act's goal of candor will be impeded. With respect to peer review, the purpose of the Medical Studies Act is to

"ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care. The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480, 468 N.E.2d 1162.)

The candor sought to be promoted is on the part of the reviewing physicians, not the applicant for privileges, and we do not believe that allowing discovery of applications would impede the review process.

██ Contemnors also maintain that paragraphs Nos. 12 and 13, which request production of documents pertaining to any retrospective investigation of Mrs. Ekstrom's biopsy surgery or efforts to verify the sterility of the surgical environment, are improper because they do not exclude materials which might be privileged under the attorney-client privilege and the corollary principle protecting communications between an insured and an insurer with a duty to defend. (See *People v. Ryan* (1964), 30 Ill. 2d 456, 197 N.E.2d 15.) Our previous discussion in connection with infection control records is applicable here. The requests are not improper on their face, and contemnors have failed to provide sufficient information to determine the applicability of either privilege to any particular documents. Accordingly, the trial court did not err in ordering compliance with these requests.

We next consider contemnors' contention that paragraphs Nos. 4, 15, 17 and 23 are improper because they call for medical records of persons who are not parties to this action. Section 8—802 of the Code of Civil Procedure provides, in pertinent part:

"§8—802. Physician and patient. No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient, except only *** (2) in actions, civil or criminal, against the physician for malpractice ***." Ill. Rev. Stat. 1987, ch. 110, par. 8—802.

██ The exception in this statute pertaining to malpractice actions is applicable only to patients who are parties to the action; records of nonparty patients are privileged. (*Parkson v. Central Du Page Hospital* (1982), 105 Ill. App. 3d 850, 854-55, 435 N.E.2d 140.) Paragraphs Nos. 4, 15 and 23 call for records of nonparty patients and are therefore improper. While with respect to paragraph No. 15, the trial court ordered that patient names be deleted, this may not sufficiently protect the confidentiality to which the nonparty patients are entitled. (See *Parkson*, 105 Ill. App. 3d at 855, 435 N.E.2d at 143-44.) Accordingly, the trial court erred in ordering compliance with paragraphs Nos. 4, 15, and 23.

Paragraph No. 17 does not on its face call for individual patient records but calls for infection control records in general. Contemnors have made no showing that producing materials within the purview of this request would entail disclosure of information protected under the physician-patient privilege. However, as the JCAH manual requires accredited hospitals to record the names of infection patients,

strict compliance would involve revealing patients' identities. As the interests of third parties are potentially involved, contemnors should be given the opportunity on remand to assert the physician-patient privilege with respect to any infection control records that identify particular patients.

Finally, we note that plaintiffs have argued in support of the trial court's order that if contemnors' construction of the Medical Studies Act is correct, the Act would be unconstitutionally vague. As previously noted, plaintiffs have mischaracterized contemnors' position, and in view of our construction of the Act, plaintiffs' constitutional challenge is inapplicable.

The judgment of the circuit court is affirmed in part, reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

GEIGER and INGLIS, JJ., concur.